**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EVE INTERNATIONAL LOGISTICS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No.** |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **SAMUEL VANARIA and** | ) | |
| **SECURE TRANSPORT SOLUTIONS, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Eve International Logistics, Inc. ("EIL" or "Plaintiff") for its Complaint for Injunctive Relief and Damages against SAMUEL VANARIA ("Vanaria") and SECURE TRANSPORT SOLUTIONS, INC., an Indiana corporation ("STS") (collectively, "Defendants"), states as follows:

**NATURE OF THIS ACTION**

1.	This is EIL's action to enjoin Defendants from wrongfully interfering with EIL's customer and employee relationships, misappropriating EIL's trade secrets through the inevitable disclosure doctrine, breaching various restrictive covenants, for damages, and for attorneys' fees and expenses incurred in enforcing its agreements with Vanaria.

2.	On March 17, 2026, Vanaria was terminated by Eve for cause.

3.	Prior to his for-cause termination, Vanaria held positions within senior management of Eve including Director of Operations, Chief Operations Officer, Senior Vice President-Operations and, most recently, as of September 3, 2025, he was Director of Strategic Accounts.

4.      To unfairly compete with EIL and gain access to EIL's trade secrets, STS decided to hire Vanaria as part of its "Dispatch Team", which duties and responsibilities were substantially similar to that which he performed at EIL.

5.      Since June 2019, EIL entrusted Vanaria with its confidences and trade secrets, including its strategic plans for competing with STS and competitively growing its business.  Vanaria also has served as the face of EIL's dealings with large customers for which EIL and STS are consistently vying for business. These business relationships and trade secrets are set to be exploited by STS through its retention of Vanaria in a position in which he cannot help but rely upon and use the trade secrets and client goodwill of EIL.

6.      To prevent the substantial business injuries with which it is now confronted, EIL and Vanaria entered into an employment agreement dated June 2019 as well as a Second Amended and Restated Employment Agreement and a Third Amended and Restated Employment Agreement dated January 1, 2026.  (A copy of the Third Amended and Restated Employment Agreement is attached hereto as Exhibit A and is referred to as the "Employment Agreement").

7.      The Employment Agreement includes, in pertinent part, non-competition, non-solicitation, confidentiality and non-disparagement clauses (the "restrictive covenants").

8.      STS is aware of the Agreements and Vanaria's obligations to EIL.  Nonetheless, STS hired or has engaged Vanaria as its agent and representative. STS's knowing and unjustified interference with EIL's contractual rights puts at risk the trade secrets, business interests, customer relationships, and goodwill that the Agreements were intended to protect. STS should not be permitted to gain an unfair competitive advantage by interfering with EIL's contractual rights or engaging Vanaria in a position where he will inevitably rely upon and use EIL's trade secrets, and STS should be preliminarily and permanently enjoined from doing so.

**PARTIES, JURISDICTION, AND VENUE**

6.      Eve is an Illinois corporation with its principal place of business located at 5011 N Lincoln Ave, Chicago IL 60625.

7.      Vanaria is an individual who resides at 612 Killarney Dr., Dyer, IN 46311.  Vanaria is a citizen of Indiana.

8.      STS is an Indiana corporation with its headquarters at 2111 Lincoln Hwy, Suite 201, Merrillville, Indiana and its principal place of business located in Indiana.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c)) as this action involves a federal claim for relief for misappropriation of trade secrets related to products and services used in interstate commerce.

10.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     In addition to the foregoing, diversity jurisdiction provides an additional jurisdictional basis over this action as the matter in controversy exceeds $75,000 and the Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.  At the time of this action's filing, the citizenship of Plaintiff was diverse from that of each Defendants.  All of the Defendants are Indiana citizens and residents and Plaintiff is a citizen and resident of Illinois.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. In addition, the Employment Agreement contains a forum selection provision designating the state or federal courts located in the State of Illinois as the venue for such actions.

## FACTS -- BACKGROUND

**A.      The Business of EIL and STS**

13.     EIL provides transportation services, freight brokerage, freight logistical services and/or freight logistics solutions.

14.     EIL has expended significant time, money and resources to develop its business, and has created methods of business, strategies, programs and technologies which did not exist in the transportation services, freight brokerage, freight logistical services and/or freight logistics solutions industry prior to Eve's development of this business.

15.     STS is a direct competitor of EIL and competes nationwide in the fields of transportation services, freight brokerage, freight logistical services and/or freight logistics solutions.

**B.      STS's Hiring and/or Engagement of an EIL Executive**

16.     From approximately January 10, 2019 to March 17, 2026, EIL employed Vanaria. Originally hired as EIL's Operations Manager, Vanaria was promoted to Director of Operations, then Chief Operations Officer, then Senior Vice President-Operations, and then, most recently as of September 3, 2025, has been working as the Director of Strategic Accounts with responsibilities for some of EIL's largest customers.

17.     At the time he was hired, Vanaria executed an Employment Agreement dated June 10, 2019.  Thereafter, he executed the Second Amended Employment Agreement dated January 1, 2024.

18.     EIL and Vanaria are parties to the Third Amended and Restated Employment Agreement dated January 1, 2026.

19.     The Employment Agreement reads, in pertinent part:

4. **Restrictive Covenants.**

In consideration of benefits and mutual obligations described elsewhere in this Agreement, and in recognition of the fact that the Company will be making available to Employee, in connection with Employee's employment with the Company, certain proprietary and confidential information about the Company's business, products and services, and clients, which the Company has expended time, resources, and money to develop and which have significant value to the Company, Employee agrees for the benefit of the Company, and as a material condition to Employee's employment with the Company, as follows:

(a)     Non-Disclosure of Confidential Information.

(i)     Employee acknowledges that Employee will receive access to confidential and proprietary business information or trade secrets ("Confidential Information") about the Company, that this information was obtained by the Company at great expense and is zealously guarded by the Company from unauthorized disclosure, and that Employee's possession of this special knowledge is due solely to Employee's employment with the Company. In recognition of the foregoing, Employee will not at any time during employment or following termination of employment for any reason, disclose, use or otherwise make available to any third party any Confidential Information relating to the Company's business, products and services, and clients; trade secrets, data, specifications, developments, inventions, and research activity; marketing and sales strategies, information, and techniques; long and short term plans; current and prospective client, vendor, supplier, and employee lists, contacts, and information; financial, personnel, and information system information; and any other information concerning the business of the Company which is not disclosed to the general public or known in the industry, except for disclosure necessary in the course of Employee's duties with the Company.

(ii)     Upon termination of employment with the Company, or at any other time at the request of the Company, Employee shall deliver to a designated Company representative all records, documents, hardware, software, and all other Company property and all copies thereof in Employee's possession. Employee acknowledges and agrees that all such materials are the sole property of the Company and that Employee will certify in writing to the Company at the time of delivery, whether upon termination or otherwise, that Employee has complied with this obligation.

(b)     Non-Solicitation.

(i)     Employee specifically acknowledges that the Confidential Information described in this Section 4(a) includes confidential data pertaining to current and

prospective clients of the Company, that such data is a valuable and unique asset of the Company's business and that the success or failure of the Company's specialized business is dependent in large part upon the Company's ability to establish and maintain close and continuing personal contacts and working relationships with such clients and prospective clients and to develop proposals which are specifically designed to meet the requirements of such clients and prospective clients. Therefore, during Employee's employment with the Company and for the "Restricted Period" (as defined below), Employee agrees that Employee shall not, except on behalf of the Company or with the Company's express written consent, solicit, approach, induce, entice or contact, either directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, any EIL Customer concerning and/or relating to transportation services, freight brokerage, freight logistical services and/or freight logistics solutions. "EIL Customer" shall mean any person, firm or entity generating any purchase order or load entry of or through the Company during the period of your employment or within one (1) year prior to the commencement of your employment, and any affiliate of such person or entity; provided, however, with respect to the period after the termination of your employment, EIL Customer shall mean any person or entity generating any purchase order or load entry of or through the Company within one (1) year prior to the termination of your employment.

(ii)    Employee specifically acknowledges that the Confidential Information described in this Section 4(a) also includes confidential data pertaining to current and prospective employees and agents of the Company, and Employee further agrees that during Employee's employment with the Company and for the Restricted Period, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit the services of any person who is an employee or agent, or former employee or agent, of the Company or solicit, contact, approach, or induce any of the Company's employees or agents, or former employees or agents, to terminate their employment or agency with the Company.

(iii)    Employee specifically acknowledges that the Confidential Information described in this Section 4(a) also includes confidential data pertaining to current and prospective vendors and suppliers of the Company, and Employee agrees that during Employee's employment with the Company and for the Restricted Period, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any other person or entity, solicit, contact, approach, or induce any Company vendor or supplier to provide products or services to competitors of the Company or to terminate or materially change such vendor's or supplier's relationship or agency with the Company excluding all vendors and supplies which Employee brought to the Company.

(iv)    Employee further agrees that, during Employee's employment with the Company and for the Restricted Period, Employee shall do nothing to interfere with any of the Company's business relationships.

(c)    Non-Competition.

(i)    Employee acknowledges and agrees that the Company's business is national in scope. Employee covenants and agrees that during Employee's employment

6

with the Company and the Restricted Period, Employee shall not, within the continental United States, own or have any active interest or involvement, whether as an investor, consultant, member, owner, stockholder, director or officer, or become employed as an employee or manager in the area of sales, logistics or operations, in any person, firm or business which, directly or indirectly, is engaged in the business of transportation services, freight brokerage, freight logistical services and/or freight logistics solutions.

Ex. A at pp. 4-6.

20.     Vanaria further agreed that he would return all property of EIL, including his laptop computer and all information in his possession relating to EIL upon separation from the company. Employment Agreement, Ex. A, ¶ 7.

21.     The Employment Agreement provides EIL with the opportunity to seek injunctive relief in the event of a breach or threatened breach.

22.     On March 17, 2026, Vanaria was terminated by EIL for cause.

23.     On March 19, 2026, EIL's counsel sent a letter to Vanaria reminding him of his non-competition and non-solicitation obligations as well as his obligations regarding confidentiality and his duty to not disclose or use any of EIL's trade secrets.

24.     In addition, EIL asked Vanaria to respond to the letter and confirm that he had not disclosed or used any EIL confidential information nor would he interfere with the Company's existing contractual arrangements or further disparage it in any manner.

25.     Vanaria did not respond in the manner requested.

26.     On or about April 20, 2026, EIL learned that Vanaria had taken a position with a competitor, specifically STS.

27.     EIL also learned at that time that Vanaria, on behalf of STS, has been reaching out to current customers and advised customers that STS would undercut EIL's pricing by approximately $300 per load.

7

28.     STS and Vanaria have attempted to disguise Vanaria's employment and role with STS by having Vanaria distribute business cards that refer to Vanaria only as "Dispatch Team" and that do not use his actual name.

29.     Despite demands to return EIL's company property, specifically the company computer issued to Vanaria, Vanaria has failed and refused to return the computer and continues to possess highly confidential, proprietary and trade secret information of EIL.

**C.      EIL's Trade Secrets and Vanaria's Access to EIL's Trade Secrets**

30.     The logistics industry is an extremely competitive one, with a variety of companies using different software and sales techniques to maximize the effectiveness of its customer and carrier networks.

31.     Vanaria's access to customer information was substantial.

32.     During his tenure with EIL, including but not limited to his time as the National Account Manager, Director of Operations, Chief Operations Officer, Senior Vice President-Operations and Director of Strategic Accounts, Vanaria had access to EIL's customer-centric business plans, its revenue projections by customer, plans for future customer projects and growth, load and lane information, customer and segmentation pricing and strategies, and its various databases with information concerning EIL's clients, EIL's strategic planning, its proprietary business approaches and tools, and its customers and potential customers (collectively, the "Trade Secrets").

33.     Likewise, while employed by EIL, Vanaria acquired EIL's confidential and proprietary information including customer-specific information relating to buying history and trends, cost information, pricing information, training materials and concepts, and service reporting data and strategic plans.

34. Vanaria maintained EIL's Trade Secrets and confidential and proprietary information in electronic form on a laptop computer issued to him by EIL.

35. Access to the information contained in the EIL laptop issued to Vanaria was protected and secured by a password.

36. EIL has developed and maintained, at great expense, valuable working relationships and substantial goodwill with its customers. EIL has long-standing relationships with many of its customers and has a reasonable expectation that such relationships will continue on a going forward basis.

37. EIL's long-standing customer relationships are of paramount significance to its business reputation and success.

38. To maintain these relationships and develop new relationships, EIL expends hundreds of thousands of dollars to train staff – with the majority of its resources spent on relationship employees, like Vanaria.

39. Vanaria also learned, through his extensive role as the National Account Manager, Director of Operations, Chief Operations Officer, Senior Vice President-Operations and Director of Strategic Accounts, the most important information factors necessary for EIL to maintain its close ties with its customers. These "relationship factors" such as customer particularities, special requests, customer-specific intricacies and the like are invaluable when competing in such a competitive market.

40. EIL's confidential and proprietary information was and is an important asset of EIL and EIL has carefully guarded it by, among other things: (1) maintaining a confidentiality policy of which its employees are regularly reminded that they will receive trade secrets and proprietary or confidentiality information concerning EIL and its customers, that this confidential information is

9

the property of EIL, and that they are obligated to maintain the confidential information in confidence; (2) requiring executives and certain employees to execute confidentiality and nondisclosure covenants in Employment Agreements; (3) limiting access to confidential information; (4) utilizing computer passwords; (5) using secure file transfer protocol with encrypted passwords; (6) limiting access to offices; (7) monitoring who is given access to confidential information; (8) instructing personnel not to show confidential information to customer or persons outside the company; and (9) requiring all confidential and proprietary information to be used for company purposes only.

41.     The only way that a competitor of EIL could acquire information regarding its customer information, including the profit margins, pricing strategies and business plans developed for that customer, is by, for example, hiring one of EIL's most important relationship employees, like Vanaria, who could then divulge the information.

42.     EIL's Trade Secrets and confidential information have economic value to a competitor because it would allow a competitor the opportunity to rely on the relationship factors with EIL's longstanding customers that have been identified and developed by EIL over time and at great expense.

43.     In his capacity as EIL's National Account Manager, Chief Operating Officer, Senior Vice President,-Operations, Director of Operations and Director of Strategic Accounts, Vanaria had a duty to protect and securely maintain EIL's Trade Secrets and confidential information.

44.     Vanaria's duty to protect EIL's Trade Secrets and confidential information included, among other things, that he would return EIL's laptop at the time his employment ended and retain no Trade Secrets or confidential information following the end of his employment relationship with the company.

**D.      Defendants' Conduct Has Forced This Lawsuit.**

45.      Defendants' actions in misappropriating Trade Secrets and confidential information, unfairly competing and improperly soliciting EIL's customers with promises of better pricing and other consideration has left EIL with no choice other than to commence immediate litigation.

46.      If STS is allowed to retain Vanaria in breach of his non-competition and non-solicitation obligations, EIL will be irreparably harmed through the loss of its goodwill, confidential and trade secret information, and competitive business advantages.

47.      Vanaria has served as the face of EIL for numerous EIL customers and was given access to a wealth of confidential and trade secret information concerning EIL, its individual relationships with its customers, and its future plans for competing with competitors like STS in an ever-increasingly competitive marketplace.

48.      Based on his unlawful retention of EIL's laptop computer, Vanaria continues to have access to EIL's Trade Secrets and confidential information and the ability to misuse such information for the benefit of himself and STS.

49.      In working as part of the "Dispatch Team" for STS, STS has placed Vanaria in a role where he will necessarily and inevitably rely on EIL's trade secrets. After having been exposed to EIL's trade secrets, Vanaria cannot help but rely on that information in performing his executive-level functions for STS.

50.      Upon information and belief, Vanaria is competing and continues to compete against EIL in violation of his non-competition obligations.

51. Further, upon information and belief, Vanaria is disclosing confidential and proprietary information regarding EIL's business, pricing structures, competitive strategies, business plans, growth models, and customer information to STS.

52. In the alternative, Vanaria will inevitably disclose EIL's trade secrets as he continues to work for a direct competitor in the same niche field (freight logistics) in a substantially similar role.

53. As often mentioned in Illinois case law but rarely applied as perfectly as here, Vanaria (and STS) are competing against EIL is a manner reminiscent of the opposing football coach with his hands on the opposition's play book. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) ("PepsiCo finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game.").

54. Likewise, upon information and belief, Vanaria is disparaging EIL in the marketplace in violation of the non-disparagement obligations set forth in the Employment Agreement.

55. STS is aware of Vanaria's activities and the existence of the Employment Agreement and has condoned Vanaria's breaches of the agreement.

56. As a result of Defendants' actions, EIL has been harmed and faces continuing harm and irreparable injury by losing customers, goodwill and the value of its proprietary information which will continue unless Vanaria is restrained.

## COUNT I
### Breach of Contract (against Vanaria)

57. EIL incorporates by reference Paragraphs 1-56 as if fully set forth.

58. Vanaria is party to valid and enforceable written contract – the Employment Agreement with EIL – which is supported by valid consideration.

59. EIL has performed all of its obligations under Agreements, including all conditions precedent for enforcement of the non-competition provisions in each agreement.

60. Vanaria has breached the Agreements by, among other things, competing against EIL in a substantially similar position for a direct competitor and disclosing and relying upon EIL confidential and proprietary information in his performance of his role at STS.

61. Vanaria has breached his Employment Agreement by soliciting EIL's customers in violation of the non-solicitation provision of the Employment Agreement.

62. Vanaria has breached his Employment Agreement by disparaging EIL's business methods, executives, and reputation in the marketplace.

63. Vanaria's breaches of the Agreements have endangered EIL and expose EIL to irreparable harm for which there is no adequate remedy at law.

64. Vanaria's breaches of the Agreements have also caused and will continue to cause EIL to suffer damages and legal costs.

65. For all the reasons described above, Vanaria's activities as part of his employment with STS constitute a breach of the terms of the Agreements.

## COUNT II
### Tortious Interference with Contract (against STS)

66. EIL incorporates by reference Paragraphs 1-65 as if fully set forth.

67. Vanaria's Employment Agreement with EIL is a valid and enforceable contract.

68. STS is aware of the existence of the Employment Agreement and specifically, the non-competition, non-solicitation and confidentiality provisions therein.

69. STS has induced Vanaria to breach the Agreements by condoning Vanaria's breaches of the Employment Agreement.

70. Vanaria's breaches of the Employment Agreement, which have been induced and ratified by STS, have endangered EIL and expose EIL to irreparable harm for which there is no adequate remedy at law.

71. Vanaria's breaches of the Employment Agreement, which have been induced and ratified by STS, have also caused and will continue to cause EIL to suffer damages and legal costs.

72. For all the reasons described above, STS's activities constitute tortious interference with Vanaria's Employment Agreement.

## COUNT III
### Tortious Interference with Prospective Business Advantage (against all Defendants)

73. EIL incorporates by reference Paragraphs 1-72 as if fully set forth.

74. EIL has a legitimate expectation of future business with its customers.

75. Defendants are aware of EIL's legitimate expectation of future business with its customers.

76. Defendants have interfered with EIL's future business with its customers, through Vanaria's disparagement of EIL, solicitation of EIL's customers and disclosure of confidential and proprietary information, as induced by STS.

77. Defendants' interference with EIL's future business with its customers has been wrongful and without justification.

78. EIL has suffered irreparable harm for which there is no adequate remedy at law through Defendants' actions.

79. Defendants' actions have also caused and will continue to cause EIL to suffer damages and legal costs.

80.     For all the reasons described above, Defendants' activities constitute tortious interference with EIL's future business expectations.

## COUNT IV
### Misappropriation of Trade Secrets (against all Defendants)

81.     EIL incorporates by reference Paragraphs 1-80 as if fully set forth.

82.     EIL has confidential and proprietary information that constitutes a trade secret.

83.     Such information derives independent value from not being generally known to its competitors.

84.     Further, such information is not readily ascertainable by proper means by EIL's competitors.

85.     EIL undertook reasonable efforts and instituted reasonable precautions to protect the confidentiality of its proprietary, confidential and trade secret information.

86.     Vanaria and STS have misappropriated EIL's Trade Secrets based on Vanaria's unlawful retention of his laptop computer and the information contained on the computer.

87.     Alternatively, Vanaria is currently employed by a direct competitor of EIL in the niche field of freight logistics services and in a position practically identical to the position he held at EIL.

88.     Accordingly, Vanaria has or will inevitably disclose EIL's Trade Secrets through his current employment at STS.

89.     Such use and disclosure is not made with EIL's consent and violates the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq, (the "Act").

90.     Defendants' misappropriation has endangered EIL and exposes EIL to irreparable harm for which there is no adequate remedy at law.

91. Defendants' misappropriation has also caused and will continue to cause EIL to suffer monetary damages and legal costs.

## COUNT V
### Violation of Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 (against all Defendants)

92. EIL incorporates by reference Paragraphs 1-91 as if fully set forth.

93. EIL is the owner of, or has exclusive rights to, the Trade Secrets.

94. The Trade Secrets are related to a product or service that is used in, or intended for use in, interstate or foreign commerce.

95. EIL has taken reasonable measures to maintain the secrecy of these Trade Secrets.

96. The Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

97. Defendants have misappropriated the Trade Secrets by improperly retaining the laptop computer and acquiring, using and/or disclosing them without Plaintiff's consent.

98. Defendants knew or had reason to know that the Trade Secrets were acquired through improper means, including breach of a duty of confidentiality and/or theft.

99. Defendants' actions were willful and malicious.

100. As a direct and proximate result of Defendants' actions, EIL has suffered significant harm and damages.

## COUNT VI
### Breach of Fiduciary Duty (against Vanaria)

101. EIL incorporates by reference Paragraphs 1-100 as if fully set forth.

16

102. Vanaria owed and continues to owe EIL fiduciary duties by virtue of the highly confidential information he possesses and by virtue of the trust and confidence that EIL reposed in him.

103. Those fiduciary duties included an obligation to return company property at the time his employment ended and not to use EIL resources to establish a business and engage in active competition with EIL while he remained in the company's employ.

104. These fiduciary duties also included an obligation not to use EIL's confidential customer information, including pricing, load and lane information, and information relating to the customer's history to develop relationships between EIL and its, and to divert business from EIL.

105. Vanaria breached his fiduciary duties owed to EIL by retaining and using EIL's confidential information and trade secrets to actively assist competitors of EIL.

106. On information and belief, Vanaria intends to continue to breach his fiduciary duties owed to EIL by continuing to use EIL's confidential information and trade secrets to conduct business for STS.

107. EIL has been damaged by Vanaria's breach of his fiduciary duties and duty of loyalty in an amount to be proved at trial.

## COUNT VII
### Conversion (against Vanaria)

108. EIL incorporates by reference Paragraphs 1-107 as if fully set forth.

109. Based on his retention of the company's laptop computer and the information contained on the computer, Vanaria has unlawfully converted EIL's property.

17

110.     As a consequence of Vanaria's actions, EIL has suffered and will continue to suffer irreparable harm and loss, and has sustained damages that include, without limitation, loss of capital, loss of business, lost profits and future profits, loss of good will, which are ongoing and continuing.

111.     EIL's damages will continue unless Vanaria is required to return EIL's property and provide a full accounting of his misuse of EIL's property.

**WHEREFORE**, EIL requests that this Court issue the following relief:

A.     That a preliminary and permanent injunction be issued enjoining Vanaria from: (1) using or accepting EIL's trade secrets; and (2) retaining Vanaria or accepting his services in a position substantially similar to those that he performed at EIL.

B.     That a preliminary and permanent injunction be issued enjoining STS from: (1) using or disclosing EIL's trade secrets; and (2) providing services to STS in a position substantially similar to those that he performed at EIL.

C.     That Vanaria be ordered to return all property of EIL in his possession or control.

D.     That EIL be awarded damages caused by Defendants' misappropriation of its trade secrets in the amount to be proved at trial.

E.     That Defendants are enjoined, both preliminarily and perpetually thereafter, from retaining, utilizing, and/or disclosing trade secrets, confidential and/or proprietary information of EIL.

F.     That EIL be awarded damages caused by Vanaria's breach of contract.

G.     That EIL be awarded damages caused by STS's tortious interference with contract.

H.     That EIL be awarded damages caused by Defendants' tortious interference with prospective economic advantage.

I.     That EIL be awarded damages caused by Vanaria's breaches of fiduciary duty.

J.      Order the Defendants liable for all available damages, including exemplary damages as a result of their willful and malicious misappropriation of EIL's trade secrets pursuant to the Illinois Trade Secrets Act.

K.      Order the Defendants liable for all available damages, including exemplary damages as a result of their willful and malicious misappropriation of EIL's trade secrets pursuant to the Defend Trade Secrets Act.

L.      Order that Vanaria be liable for all costs, expenses, and attorneys' fees that EIL incurred in bringing this action.

M.      Award such other damages and further relief as this Court deems appropriate.

Dated: April 30, 2026

Respectfully submitted,

EVE INTERNATIONAL LOGISTICS, INC.

By:  *Andrew P. Bleiman*
            Andrew P. Bleiman, one of its
            attorneys

Marks & Klein, LLC
Andrew P. Bleiman (ARDC 6255640)
Mark I. Fishbein (ARDC 6206919)
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
312-206-5162
andrew@marksklein.com
mark@marksklein.com

19